IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**HOOKER CREEK COMPANIES, LLC,**

    Appellant,

v.

**REMINGTON RANCH, LLC, and COLUMBIA STATE BANK,**

    Appellees.

No. CV 11-090-MO

OPINION AND ORDER

**MOSMAN, J.,**

Hooker Creek Companies, LLC ("HCC") appeals the decision of the Bankruptcy Court granting summary judgment to Remington Ranch, LLC, and Columbia State Bank (collectively, "appellees"). The Bankruptcy Judge determined that HCC's construction lien was invalid as a matter of law.

## BACKGROUND

The parties are familiar with the facts of this case, and I have little to add to the Bankruptcy Court's succinct recitation of those facts.

1 – OPINION AND ORDER

## DISCUSSION

### I. Application of Or. Rev. Stat. § 701.131(1)

HCC argues that Or. Rev. Stat. § 701.131(1) entitles it to a construction lien for "work not subject to this chapter," and that its delivery of materials and equipment on the Remington Ranch project is work not subject to this chapter. We start with Or. Rev. Stat. § 701.131(1), which states:

> Except as provided in subsection (2) of this section, a contractor may not perfect a construction lien, file a complaint with the Construction Contractors Board or commence an arbitration or a court action for compensation for the performance of any work or for the breach of any contract for work that is subject to this chapter, unless the contractor had a valid license issued by the board and properly endorsed for the work performed:
> (a) At the time the contractor bid or entered into the contract for performance of the work; and
> (b) Continuously while performing the work for which compensation is sought.

On its face, the statute prevents an unlicensed contractor from perfecting a construction lien or filing certain complaints. The statute breaks out those prohibited complaints into three categories: (1) filing a complaint with the Construction Contractors Board; (2) commencing an arbitration; and (3) commencing a court action. However, the statute only limits those complaints that are based on performance of work or breach of contract "for work that is subject to this chapter."

Based on the language of the statute, I conclude that the phrase "for work that is subject to this chapter" does not modify "may not perfect a construction lien." As I read the statute, an unlicensed contractor simply may not perfect a construction lien, regardless of whether the specific work performed was "subject to this chapter." The phrase "for work that is subject to this chapter" must be read as an indivisible piece of the longer phrase, "for the performance of any <u>work</u> or for the breach of any contract for <u>work</u> that is subject to this chapter." (emphasis added)

2 – OPINION AND ORDER

Read in context, the contested phrase modifies what sort of actions or complaints can only be filed or commenced by a licensed contractor.

HCC argues that the phrase "for work that is subject to this chapter" modifies "perfect a construction lien," but relies almost entirely on the general argument that the statute should be construed in HCC's favor. However, even if I considered the statutory construction question too close to call, I would still interpret the section against HCC. Each side argues that any statutory ambiguity should be resolved in its favor.[1] Appellees argue that because Or. Rev. Stat. Chapter 701 is designed to protect the public, it should be construed against HCC. HCC argues that section 701.131(1) should be interpreted in its favor because that section places a restriction on its right to sue. Each party is correct, to a point. HCC is correct that section 701.131(1) does limit a party's ability to sue in certain circumstances. Importantly, however, HCC is not simply suing for breach of contract here; rather, it is attempting to rely on a construction lien. I conclude that the portion of section 701.131(1) dealing with the ability to perfect a construction lien is not a restriction of a party's right to sue generally, but instead limits only the extraordinary privileges bestowed on those who strictly comply with the requirements of lien perfection—which are plainly intended to protect the public. *Splinters, Inc. v. Anderson/Weitz*, 87 P.3d 689, 697 n.7 (Or. Ct. App. 2004) ("The general policy that underlies ORS chapter 701 is consumer protection.") Therefore, I would interpret the statute against HCC if the statutory language were ambiguous.

Even were I to accept HCC's interpretation of section 701.131(1), however, I would still conclude that HCC may not sue on its construction lien. HCC's preferred interpretation—that

---

[1] Appellees also argue that HCC was required to "strictly comply" with the statutes. I agree, but that's not really the question here. Rather, the question is: Assuming an ambiguity in the statutory language, in whose favor should the statute be construed?

3 – OPINION AND ORDER

"for work that is subject to this chapter" modifies "may not perfect a construction lien"—only gets HCC halfway there. Presumably HCC would argue by inference from the language of the statute that it *could* perfect a construction lien for work *not* "subject to this chapter." Specifically, HCC points to section 701.010(3) to argue that delivery of materials and equipment, which the contractor does not fabricate or consume, is not "subject to this chapter"; and HCC argues that there is a dispute of fact regarding whether HCC did fabricate or use any of the materials or equipment it delivered on the Remington Ranch project.

However, HCC's argument doesn't account for the introductory part of section 701.010, which states, "The following persons are exempt from licensure," and the first part of section 701.010(3), which applies to a "person who furnishes . . . but does not fabricate." (emphasis added) Those sections plainly apply to persons (which may of course include companies), not individual actions or services. Here, HCC was a person subject to licensure on the Remington Ranch project because it was (at least for purposes of summary judgment) plainly a "contractor" under section 701.005(5)(a), and it performed substantial work that is "subject to this chapter" when it performed excavation work on the project.[2] Therefore, HCC categorically may not be considered a person "not subject to licensure" and section 701.010 simply does not apply to HCC vis-à-vis the Remington Project.

In response, HCC argues that the Remington Ranch project is conceptually divisible—between performance of services and the delivery of materials and equipment—and that it could be considered both a contractor and not a contractor regarding certain portions of the project. If I were to accept HCC's argument, it would actually be irrelevant whether I accepted

---

[2] Whether HCC was in fact the contractor, such that it could sue at all, is a question the Bankruptcy Court correctly resolved in HCC's favor for purposes of summary judgment.

4 – OPINION AND ORDER

HCC's interpretation of section 701.131(1) discussed above. That is, under HCC's divisible project theory, it could argue either: (1) that it was not a "contractor" for portions of the Remington Ranch project, section 701.131(1) only applies to "contractors," and therefore section 701.131(1) does not apply to HCC in the first place regarding those portions of the project; or (2) that even if 701.131(1) generally applies to HCC, for certain portions of the project it was a "person who furnishes . . . but does not fabricate" under section 701.010(3).

I reject both arguments because I hold that HCC must be considered a contractor vis-à-vis the entire Remington Ranch project, and may not attempt to exempt portions of its work on the project from the licensing requirement. HCC cites no support for the proposition that courts should engage in the tenuous business of parsing out exactly which parts of a contractor's work on a project required a license. Instead, HCC argues that this reasoning could be used to bar lien perfection by an entity that only delivers materials, or by an entity that may be a contractor as to one project, but who only delivers materials on another project. These concerns are unfounded; between projects is plainly a more sensible place to draw a line—e.g., by looking at the parameters of the bid for that project—than between the overlapping components of a particular job. As the Oregon Court of Appeals recognized in *Parthenon Construction & Design, Inc. v. Neuman*, 999 P.2d 1169 (Or. Ct. App. 2000), courts should analyze the "contractor's entire performance as defined by the parties' agreement." *Id.* at 1174.[3] I follow the Oregon courts' lead and decline to allow HCC to define its work on the Remington Ranch project "in a patchwork, pick-and-choose fashion." *Id.*

---

[3] While *Parthenon* was dealing with other language in the predecessor to section 701.131, the more general point is salient here: The entire performance of the contractor on a project constitutes the contractor's work vis-à-vis that project.

5 – OPINION AND ORDER

## II. Safe Harbor

HCC may not rely on the safe harbor provision of Or. Rev. Stat. § 701.131(2) because it fails section 701.131(2)(a)(B), which states that 701.131(1) does not apply if: "At the time the contractor perfected a construction lien or commenced any proceeding subject to the provisions of subsection (1) of this section, the contractor was licensed by the board and properly endorsed for the work performed."

HCC argues that it satisfies section 701.131(2)(a)(B)—such that it may sue on its lien—as long as it commenced its proceeding after obtaining a license. However, I agree with the bankruptcy court that the plain meaning of the statutory language is that the safe harbor only applies to a contractor who is licensed "[a]t the time the contractor perfected a construction lien or commenced any proceeding," *whichever is applicable*; and here, HCC attempts to rely on a construction lien, so it must show it obtained a license prior to perfecting its lien—which it did not. (Bankr. Op. (#1-3) 13.) Section 701.131(2) must be read in the context of 701.131 as a whole, and 701.131(1) plainly draws a distinction between perfecting a lien and commencing certain proceedings. Allowing HCC to benefit from a lien it filed when it was not licensed, simply by filing suit, would allow an end-run around the basic licensure requirement for liens.

Moreover, as the Bankruptcy Court noted, it is unlikely HCC *ever* actually perfected its lien in this case because it was unlicensed at the time it filed—and there was therefore nothing to foreclose. (Bankr. Op. (#1-3) 13, citing *Barker v. Parker*, 662 P.2d 779, 780–81) That conclusion is also consistent with my reading of section 701.131. Specifically, section 701.131(1) says a party can't perfect a construction lien if it didn't have a license. At the time HCC filed its lien it did not have a license, so it did not perfect the lien at the time of filing, and there is no indication HCC ever subsequently perfected its lien. HCC does not argue (and has

6 – OPINION AND ORDER

cited no support for the proposition) that belatedly obtaining a license somehow retroactively perfects a construction lien in Oregon.

In sum, it is unlikely HCC ever perfected its lien; and even if it had, section 701.131(2) would have required HCC to obtain a license prior to that perfection in order to gain "safe harbor."

### III. Attribution of HCAP's License to HCC

HCC argues that it is entitled to a construction lien for all of its work on Remington Ranch because that work was performed by its licensed subsidiary, HCAP. However, Oregon law plainly requires each distinct legal entity to possess its own license. *See* Or. Admin. R. 812-003-0100 ("No entity shall perform work subject to ORS Chapter 701 through the use of another entity's license."); *Splinters,* 87 P.3d at 694 (refusing to attribute the license of a joint venturer to the joint venture). Thus, HCC seeks authority to help it around that basic principle.

Or. Rev. Stat. § 701.021(1) does not help HCC. That section allows a joint venture to "undertake or submit a bid to do work" if any joint venturer has a valid license. However, that section applies only to a joint venture, of which there is no evidence here; and more importantly, it plainly does not allow a joint venture to perform work without a license. *See Splinters*, 87 P.3d at 694 (holding, under the predecessor to § 701.021(1), that the joint venture at issue was required to possess its own license by the time it commenced work on the project).

Finally, HCC cites the unpublished opinions in *MasTec North America, Inc. v. Coos County (MasTec I)*, 2006 WL 176653 (D. Or. 2006), and *MasTec North America, Inc. v. Coos County (MasTec II)*, 2007 WL 2027011 (D. Or. 2007). In those cases, the court apparently held that because there was evidence that the entities acted as "one and the same corporation," one might infer that the subsidiary's license could be attributed to the parent. It was unclear in that case whether the court was applying Or. Rev. Stat. § 701.055(1), renumbered as § 701.021(1),

7 – OPINION AND ORDER

which applies only to joint ventures and does not permit joint ventures to perform work without a license. *See Splinters*, 87 P.3d at 694.

Regardless of the *MasTec* court's precise rationale, however, there is no evidence here of a joint venture or "single entity." There was some initial confusion in the bidding process about which entity was contracting, but this minor confusion simply could not as a matter of law erase the legal distinction between HCC and HCAP; on the contrary, I must imagine that HCC would be loath to give up all of the benefits it gains by operating HCAP as a legally distinct subsidiary.

The *MasTec* opinions are also readily distinguishable because they involved a public contract. *See MasTec I,* 2006 WL 176653 at *6 (citing *Schlumberger Tech., Inc. v. Tri-Met,* 929 P.2d 331 (Or. Ct. App. 1996), for the proposition that substantial compliance was sufficient for purposes of public contract bidding statutes). In this private contract case, there is no support for allowing "substantial compliance" by HCC, and HCC plainly did not strictly comply with the licensing requirements.

## IV.  Equity

Finally, in response to HCC's general arguments sounding in equity, I do not find this result unjust. It remains unclear why HCAP, the licensed entity that performed the work, did not perfect a lien and sue on that lien. Instead, I am faced only with an unlicensed parent suing on a lien that it likely never perfected. Moreover, it is worth reiterating that this outcome is only onerous to HCC in this limited bankruptcy context. None of the holdings above would have prevented HCC from suing for breach of contract or work performed generally; and under section 701.131(2), HCC likely could have gotten a license, then filed for a lien, then sued. It is only the bankruptcy priority system, not the licensing scheme, that may have harmed HCC in this

case—and I am powerless to help HCC, or any of the other parties presumably waiting in line in this bankruptcy, overcome the inevitable obstacles of bankruptcy.

## CONCLUSION

HCC is not entitled to a construction lien for any portion of the work performed on the Remington Ranch project. The Bankruptcy Court is AFFIRMED.

IT IS SO ORDERED.

DATED this 9 day of June, 2011.

MICHAEL W. MOSMAN
United States District Court

9 – OPINION AND ORDER